UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SALVADOR H. BELTRAN,

              Petitioner,

-vs-                                                 Case No.  8:05-cv-650-T-24MSS

SECRETARY, DEPARTMENT OF CORRECTIONS,

              Respondent.
_____/

## **ORDER**

This cause is before the Court on Petitioner Salvador Beltran's 28 U.S.C. § 2254 petition for writ of habeas corpus. He is proceeding on his amended petition (Doc. No. 3) (hereinafter "Petition"). Respondent filed a response (Doc. No. 13) and Beltran filed a reply (Doc. No. 16). Beltran challenges his conviction and sentence entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida, in case no. 00-19219.

### BACKGROUND

On August 20, 2001, Beltran was charged in a supersedes information with 1) delivery of cocaine, 2) possession of cocaine, and 3) trafficking in cocaine (Counts 1, 2 and 3). Beltran proceeded to jury trial. On August 22, 2001, the jury found him guilty as charged. On October 1, 2001, the state trial court sentenced Beltran to 78 months incarceration on counts one and three, with a three-year mandatory term on count three (trafficking in cocaine). The state trial court sentenced him to 60 months incarceration on count two (possession of cocaine). All sentences run concurrently.

Beltran appealed. On December 27, 2002, the state district court of appeal per curiam affirmed the conviction and sentence. Beltran v. State, 837 So. 2d 973 (Fla. 2d DCA 2002)[table].

On August 28, 2003, Beltran filed a pro se rule 3.850 motion for postconviction relief raising six grounds for relief.  On December 30, 2003, the state trial court summarily denied grounds 1, 3, 4, 5, and 6. The state trial court ordered the State to respond to ground 2 of the rule 3.850 motion.  In ground 2, Beltran attacked his 3-year mandatory prison term on the trafficking count. Following the state's response, the state trial court, on March 24, 2004, granted relief on ground 2.

Beltran appealed the denial of postconviction relief on claims 1, 3, 4, 5, and 6. On September 24, 2004, the state district court of appeal per curiam affirmed the denial of rule 3.850 relief on grounds 1, 3, 4, 5, and 6. Beltran v. State, 2004 Fla. App. LEXIS 14145 (Fla. 2d DCA Sept. 24, 2004)[table].

Beltran then filed a pro se state petition for writ of habeas corpus dated December 7, 2004, in which he alleged that his appellate counsel was ineffective.  On January 5, 2005, Beltran was ordered to file an amended petition that met the State's oath requirement, which he did. On February 15, 2005, the state district court of appeal denied Beltran's habeas corpus petition.

Beltran timely filed a pro se 28 U.S.C. § 2254 petition dated March 30, 2005. The petition was dismissed without prejudice to Beltran's filing an amended petition. (Doc. No. 2)  On April 18, 2005, Beltran timely filed the amended petition on which he is proceeding. (Doc. No. 3).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. Williams v. Taylor, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. Breedlove v. Moore, 279 F.3d 952 (11th Cir. 2002).

## DISCUSSION

A review of the record demonstrates that, for the following reasons, Beltran's petition must be **DISMISSED**.

### Ground One

Beltran alleges that the state trial court erred in denying his motion for mistrial. Beltran's motion for mistrial was based on the redirect testimony of Detective Losat. Beltran contends that the State improperly elicited from Losat that 1) Beltran was a supplier of large amounts of cocaine and 2) Losat once met with Beltran while Losat was working undercover. Beltran alleges that Losat's testimony had no probative value and was evidence of crimes or bad acts not charged in the superseding information.

Beltran relies on defense counsel's motion for mistrial made during the cross-examination of Detective Losat. Counsel inquired of Losat:

Q     (by Ms. Pardo, Defense Counsel) Now, when was my client arrested for these transactions?

A     I don't know the exact date he was arrested. I issued a warrant when I – when it gets into the computer system, any of the warrants, detectives, if he is driving down the road, a patrol deputy stops him for a traffic infraction and runs his driver's license, he could be arrested then. I did not physically go out and arrest him.

Q     If I could approach the witness with part of his police report in order to refresh his recollection.

                        THE COURT: Yes, you may.

Q     Do you recognize that?

A     Yeah, but that's not when he was arrested.

Q     Now, I'm asking you if – what is that piece of paper?

A     It's a warrant.

Q     What date was the arrest warrant secured on my client?

A     11/15 of 2000.

Q     November 15th of the year 2000?

A     Correct.

(Respondent's Ex. 1, V 2 R 115)

On redirect examination of Losat, Prosecutor Dirks inquired:

Q     Detective Losat, you were questioned on cross-examination about the date that the arrest warrant was issued for the Defendant. Obviously, occurring some time after February 9th of the year 2000. Why didn't you arrest the Defendant on February 9th, 2000?

> A   Because the information we were gathering during this investigation and information we were receiving from Jennifer was that he was a large supplier of large amounts of cocaine. There was a time when I met with the Defendant outside his residence in the parking lot in an undercover capacity –
>
> THE COURT: Excuse me. Next question.
>
> . . . . .

Defense counsel did not object. The prosecutor then inquired:

Q   Have you – did you have additional – you – did you ever face-to-face meet the Defendant, Salvador Beltran at this residence?

A   Yes.

Q   What date?

MS. PARDO: Judge, I'm going to object and ask to approach.

THE COURT: Approach the bench please. (Whereupon, the following conversation was held at sidebar.)

. . . .

MS. PARDO: Judge, at this time I would pose an objection as to his trying to elicit other bad acts of my client, as I think it would be appropriate for me to put a Motion for Mistrial on the table. There is not an identity question in this case.

THE COURT: What is the purpose of this later meeting with the Defendant?

MR. DIRKS: Because he was going to continue conversations in an attempt to get a larger amount of cocaine from Mr. Beltran and conduct other transactions of Jennifer Staley, the one we have been talking about. So, there is the suggestion made, you know, why there is at this late date in time, that there's been, you know, no arrest of the Defendant.

THE COURT: I don't know what the issues are in this case as far as –

MS. PARDO: [sic – see f.n.1]   If there are other transactions they have not been provided. I don't want any other transactions . . . If you just you want to

-5-

> say the investigation continued, that's fine, but let's not go into any other transaction that he is not on trial for today.[1]
>
> MS. PARDO: Thank you.
>
> (Whereupon, side bar conversations were concluded.)
>
> . . . .
>
> The prosecutor then inquired of the officer:
>
> Q   Detective Losat, did you not arrest the Defendant on February 9th of the year 2000, because you were continuing your investigation regarding the Defendant?
>
> A   Correct
>
> . . . .

(Resp. Ex. 1, V 2 T 117-119)

Defense counsel, through direct inquiry of Detective Losat, sought to have the jury attach significance to the timing of Beltran's arrest. In doing so, she opened the door to an explanation of why Beltran was not immediately arrested. This explanation included inculpatory evidence of other "bad acts" Beltran had committed. At the side bar conference (see above), the state trial court judge required the prosecutor to limit Losat's testimony: "I don't want any other transactions in this; just you want to say the investigation continued, that's fine, but let's not go into any other transactions that he is not on trial for today."

---

[1] This was a transcription error. Logically, these words were spoken by the state trial court judge.

Applying the stringent Williams[2] rule standard, it is objectively reasonable to conclude that denial of the mistrial motion (Resp. Ex. 1, V 2 T 130)[3] was not so fundamentally unfair as to violate Beltran's due process rights. During closing arguments, the prosecutor did not urge a conviction based on any uncharged act or the officer's reference to Beltran's status as a supplier of drugs. Moreover, from the informant's testimony recounting the two transactions, the jury could have found, from properly admitted evidence, that Beltran was a large supplier because he had sizeable amounts of cocaine in his residence for ready distribution. (e.g., Resp. Ex. 1, V 2 T 78-79, 84).

Beltran contended on direct appeal that all of the information identifying him as the supplier came from the informant. (E.g., Resp. Ex. 2 at p.7) Notwithstanding Beltran's contention, the state trial court record demonstrates that the informant's information was corroborated by law enforcement's surveillance. Before the drug transactions took place, the informant was searched to assure she had no drugs. (Resp. Ex. 1, V 2 T 144, 152). The informant was observed by law enforcement going to Beltran's apartment and after exiting

---

[2] Williams rule evidence is evidence of prior crimes or bad acts of the defendant presented by the State under section 90.404(2)(a), as character evidence of the accused, when relevant to prove a material fact in issue. The name of the rule is derived from the lead case on the subject. Williams v. State, 110 So.2d 654 (Fla.1959).

Typically, Williams rule evidence is admitted as "specific instance" evidence under section Florida Statute 90.405(2). The case law usually assumes that the trial court will conduct a "probative versus prejudicial" analysis under section 90.403 in connection with a decision under the Williams rule analysis. See Insko v. State, 884 So.2d 312 (Fla. 2d DCA 2004); McLean v. State, 854 So.2d 796 (Fla. 2d DCA 2003).

In the present case, the probative value of the direct inquiry of Losat outweighed any claimed prejudicial effect. See e.g., Jameson v. Wainwright, 719 F.2d 1125 (11th Cir. 1983)(recognizing state law that evidence of collateral crimes may be admitted to establish the entire context out of which the criminal conduct arose); Hall v. Wainwright, 733 F.2d 766, 770 (11th Cir. 1984) (evidence of another murder pertained to common scheme and motive and was neither a critical nor highly significant factor in the murder prosecution).

[3] The state trial court judge denied the motion for mistrial after the jury panel had exited the courtroom for a mid-morning break.

Beltran's apartment, she met with the officers and gave them the cocaine Beltran sold her. (V 2 T 145, 153-154) Beltran pointed to the informant's charges and prior record, ostensibly to show a motive for her to lie. (Resp. Ex. 2 at pgs. 16-17) Notwithstanding the informant's motivation to lie, there was no evidence showing that any individual other than Beltran furnished the drugs to the informant.

On direct appeal, the State specifically asserted that the issue of the denial of the motion for mistrial was not raised at trial and therefore, not preserved for review. (Resp. Ex. 3 at p. 6) Alternatively, the State contended the defense "opened the door" to the prosecutor's questioning Losat. This invited-error doctrine constitutes independent and adequate grounds barring federal review. See Francois v. Wainwright, 741 F.2d 1275 (11th Cir. 1984)(doctrine of invited error, under which a party cannot complain on appeal of error for which he is responsible, is well-established in the Florida courts).[4]

In view of the case the State presented, a rational jury could have found Beltran guilty beyond a reasonable doubt, and it is objectively reasonable to conclude that any error that might have occurred relative to the state trial court's evidentiary ruling had no substantial and injurious effect or influence in determining the jury's verdict. See Mitchell v. Esparza, 540 U.S. at 18 (Ohio court's decision to subject Eighth Amendment claim to harmless error review was not objectively unreasonable); Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). The state court decision resulted in a reasonable application of

---

[4] Even if the state's invited-error doctrine is viewed as a state "substantive" ground, the substantive ground is independent and adequate to support the judgment. A federal court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment; this rule applies whether the state law ground is substantive or procedural. See Eagle v. Linahan, 279 F.3d 926, 936 (11th Cir. 2001)(citing Coleman v. Thompson, 501 U.S. 722, 729 (1991)).

established Supreme Court precedent and a reasonable determination of the facts in light of the evidence.

Most importantly, this Court does not have subject matter jurisdiction to address ground one. A Florida prisoner's claim that evidence of uncharged crimes was introduced in contravention of state law does not present a cognizable claim for federal habeas corpus relief. Moreover, the state trial court had the discretion to deny a motion for mistrial based on admission of similar crime evidence, and the ruling was a matter of state law. It is not the province of this federal Court to reexamine state-court determinations on state-law questions. See Estelle v. McGuire, 502 U.S. 62, 72 (1991) ("Nor do our habeas powers allow us to reverse [a petitioner's] conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling that the prior injury evidence was admissible as bad acts evidence in this case.").[5]

Furthermore, ground one is procedurally barred because, on direct appeal, Beltran did not raise his claim concerning the state trial court's denial of the motion for mistrial as a federal issue. The issue was addressed in state law terms. Pursuant to Duncan v. Henry, 513 U.S. 364, 365 (1995), briefing an issue as a matter of state law is not sufficient to exhaust a federal claim on the same grounds. Id., 513 U.S. at 366 ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). See Baldwin v. Reese, 124 S. Ct. 1347, 1350 (2004).

---

[5] See also, Marshall v. Lonberger, 459 U.S. 422, 438 n. 6 (1983)("[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules").

Claims that are procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, Wainwright v. Sykes, 433 U.S. 724 (1977), or can establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in Murray v. Carrier, 477 U.S. at 496. Beltran has not done so. Further and alternatively, Beltran does not make a threshold showing of entitlement to relief under the AEDPA standards. Beltran cannot show the state court decision on ground one was an unreasonable application of established Supreme Court precedent.

In Estelle v. McGuire, 502 U.S. 62, 75 (1991), the Supreme Court declined to hold that the admission of prior injury evidence violated due process. In Spencer v. Texas, 385 U.S. 554, 563-64 (1967) the Supreme Court rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose was served. Id. at 563-64. The Court recognized that it was not a rule-making organ for the promulgation of state rules of criminal procedure. Id. at 564.

While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, see Old Chief v. United States, 519 U.S. 172, 117 (1997); Huddleston v. United States, 485 U.S. 681 (1988), the Court has not explicitly addressed admission of "uncharged acts" evidence in constitutional terms. Because there is no Supreme Court precedent that the state decision in Beltran's case could be deemed "contrary to" under the AEDPA standards, Beltran is unable to make a threshold showing of entitlement to relief. See e.g., Bugh v. Mitchell, 329 F.3d 496, 512-513 (6th Cir.

2003)(reaching similar conclusion with regard to state decision on claim that admission of evidence concerning similar, uncharged acts of child molestation by Bugh violated due process rights to a fundamentally fair trial), cert. denied, Bugh v. Bradshaw, 540 U.S. 930 (2003); see also, Mitchell v. Esparza, 540 U.S. 12 (2003)  (federal court may not overrule a state court for simply holding a view different from its own, when the precedent from the federal court is, at best, ambiguous);  Powell v. Sec'y, 131 Fed. Appx. 146 (11th Cir. 2005) (where no Supreme Court precedent is on point, court cannot say a state court's conclusion is contrary to clearly established federal law as determined by Supreme Court).

Moreover, state-court evidentiary rulings generally cannot rise to the level of due process violations unless they offend some principle of justice so "rooted in the traditions and conscience of our people" as to be ranked as fundamental. See Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (quoting Patterson v. New York, 432 U.S. 197, 202 (1977)); see also Spencer v. Texas, 385 U.S. 554, 563-64 (1967). Federal habeas corpus relief is not available to correct an error of state law unless the error is so egregious as to deny due process or equal protection. Pulley v. Harris, 465 U.S. 37 (1984). Beltran's case does not raise such concerns.

Ground one does not warrant federal habeas corpus relief.

## Ground Two

Beltran contends the state trial court committed "fundamental error" by instructing the jury on uncharged crimes.  In support of his claim, Beltran alleges:

> The Petitioner was charged in Count One of the Information with Delivery of Cocaine only.  The trial court, however, instructed the jury on both delivery and sale of cocaine.   In Count Three, Petitioner was charged with Trafficking by delivery or possession.  The trial court, however, instructed the

> jury it could convict Petitioner of trafficking by selling, purchasing, delivering, or possessing 28 grams or more or by bringing it into Florida. The instructions permitted the jury to convict on crimes that had not been charged.

Ground two is a state law issue and this Court does not have subject matter jurisdiction. Furthermore, the instructions given did not rise to the level of fundamental error. See Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 772-773 (11th Cir. 2003) (citing Archer v. Florida, 673 So. 2d 17, 20 (Fla. 1996)).

There is a difference between instructing the jury on an alternative to the crime charged, and on an alternative, uncharged offense. Fundamental error in jury instructions is subject to harmless error analysis under Florida law. Davis v. State, 804 So. 2d 400 (Fla. 4th DCA 2001). During the charge conference, the state trial court asked if it were to instruct only on "delivered" for count one. Defense counsel agreed and the state trial court judge said that he would strike the balance of the instruction "so it should just be one: Salvador Beltran delivered a controlled substance. . . " The prosecutor responded that there was in fact a sale but that it was probably duplicitous. The state trial court judge then said that he would insert sold and/or delivered. There was no objection. (Resp. Ex. 1, R 169).

The state trial court judge then stated as to count one, he would give the definitions of sale and deliver. (Resp. Ex.1, R 170). On count three, the trafficking charge, the trial court judge stated he would instruct on "sold, delivered, or possessed." (Resp. Ex.1, R 170-171). Defense counsel was present and did not object. The trial court then read again all the instructions as they would be given for all three charges. There was no objection. (Resp. Ex.1, R 180-181) After giving the instructions to the jury, the state trial court asked

both attorneys if there were any other requests;  both attorneys responded in the negative. (Respondent Ex.1, R 202-203)

Whether the allegations in a  criminal information support instruction on a charge under state law and whether an instruction in a criminal prosecution in Florida implicates the state's fundamental error doctrine are matters solely within the province of the Florida courts. The federal writ of habeas corpus, 28 U.S.C. § 2254, was not enacted to enforce state-created rights. Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000). Even when a petition which actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. See Willeford v. Estelle, 538 F.2d 1194, 1196-98 (5th Cir. 1976).

Moreover, ground two is procedurally barred because Beltran did not preserve and then raise, on direct appeal, a constitutional claim regarding the jury instruction. The arguments on direct appeal were raised as state law issues only. See Duncan v. Henry, 513 U.S. 364, 365 (1995). Beltran does not make the required showing to avoid the procedural bar.

The focus of this Court's AEDPA inquiry is not on the broad question of whether or not the state trial court erred in giving the complained-of instruction. Agan v. Vaughn, 119 F.3d 1538, 1545 (11th Cir. 1997)(observing that as a federal court, Eleventh Circuit did not have final say on what instructions a bribery charge must contain in order to accurately state Georgia law). Rather, the limited question is whether the decision resulted in a reasonable application of clearly established federal law as determined by the Supreme Court.  On habeas review, the federal court reviews the alleged instructional error in the

context of the entire trial, and only for the denial of fundamental fairness and due process. See Henderson v. Kibbe, 431 U.S. 145, 156-57 (1977)(pre-AEDPA decision addressing omission of jury instruction on causation).

In making the determination of whether any error or omission in the jury charge was so prejudicial as to amount to a violation of due process, Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983), this Court will not judge portions of the jury charge, or even the entire charge, standing alone. The defendant's right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair. See Estelle v. McGuire, 502 U.S. 62, 72 (1991); Jacobs v. Singletary, 952 F.2d 1282, 1290 (11th Cir. 1992).

In Beltran's case, it is objectively reasonable to conclude that the jury instructions were not so misleading as to violate his right to due process. Beltran's jury was instructed on the elements of delivery of cocaine as charged in count one and trafficking as charged in count three, and the jury found him guilty as charged. The addition of the instruction on sale of cocaine did not relieve the state of proving Beltran's guilt on count one as charged, or count three as charged.

The claimed instructional error was harmless. Because sale and then delivery requires establishing consideration, the additional language regarding sale was mere surplusage. See Bosier v. State, 419 So. 2d 1042, 1044 (Fla. 1982), Moreover, the offense of trafficking in cocaine can be committed by one or more of the several acts delineated in the statute, including sale and delivery, State v. Mena, 471 So. 2d 1297, 1299 (Fla. 3rd

DCA 1985). Because the trafficking statute encompassed delivery, the language in the instructions concerning sale of cocaine did not reduce the state's burden in any regard.

Moreover, Beltran did not defend on grounds he committed "sale" of cocaine but did not "deliver cocaine" as charged. Beltran's defense was that there was insufficient proof of his involvement, and in finding him guilty, the jury accepted the state's theory he delivered, possessed, and trafficked in cocaine. In view of the evidence establishing his guilt of the charged offenses, it is objectively reasonable to conclude the alleged instruction error did not have a substantial and injurious effect or influence in determining the jury's verdict. Any error was harmless. See Brecht v. Abrahamson, supra.

Ground two does not warrant federal habeas relief.

### Grounds Three and Four

Beltran contends his trial counsel rendered ineffective assistance. In ground three, he faults his counsel for failing to argue that the venire was not properly sworn. In ground four, he faults his counsel for not raising an entrapment defense.[6] Beltran fails to meet his burden under the AEDPA on each of his grounds. The state decision on his grounds resulted in a reasonable application of Strickland v. Washington, 466 U.S. 668 (1984), and a reasonable determination of the facts in light of the evidence.

First, the petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as

---

[6] Beltran did not present specific argument on these grounds in his summary appeal brief, only asking the state district court of appeal review pursuant to Fla.R.App.P. 9.141 governing summary appeals. Because his appeal did not follow an evidentiary hearing, his briefing only the sentencing is not construed as a sale and delivery, waiver of the claims of ineffective assistance he now raises in grounds four and five of the federal petition.

counsel guaranteed the defendant by the Sixth Amendment. Counsel's performance is constitutionally deficient when it "[falls] below an objective standard of reasonableness." Id. at 688.

Judicial scrutiny of a counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Strickland, 466 U.S. at 689. The reviewing court must indulge the strong presumption that counsel's performance was reasonable and counsel made all significant decisions in the exercise of reasonable professional judgment. Id., 466 U.S. at 690. The Supreme Court has declined to articulate specific guidelines for appropriate attorney conduct and instead emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland at 688).[7]

Second, the petitioner must show that deficient performance prejudiced the defense. Strickland, at 693-96. The prejudice prong requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687. Strickland counsels that if a defendant fails to make a proper

---

[7] When reviewing counsel's decisions, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled. See Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(en banc)(quoting Burger v. Kemp, 483 U.S. 776 (1987)), cert. denied, 531 U.S. 1204 (2001). No absolute rules dictate what is reasonable performance for lawyers. See Chandler, at 1317. The reasonableness of counsel's performance is determined through deferential review of all of the circumstances from the perspective of counsel at the time of the alleged errors. Strickland, 466 U.S. at 689. In assessing counsel's handling of the case, the reviewing court must be careful to avoid all temptation to "second-guess" his decisions as to trial strategy. Id. at 689. Instead, the court examines "the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.

showing under one of the prongs, the court need not consider the other prong. Id., 466 U.S. at 697.

In rejecting Beltran's claim regarding the omission of the venire oath, the state trial court found his claim facially insufficient under both prongs of Strickland. It is objectively reasonable to dispose of the ground on the deficiency prong since Beltran did not allege the oath was not in fact administered to prospective jurors pursuant to rule 3.300.[8] If and to the extent he seeks to raise such a claim, the claim would be new and would be time-barred under rule 3.850 motion and barred by the state's successive petition doctrine.[9]

Alternatively, Beltran has not shown prejudice and ground three can be disposed of on the Strickland prejudice prong. Beltran is unable to show the preliminary oath requirement need be accomplished on the record under state law. See Smith v. State, 866 So. 2d 51 (Fla. 2004) [(where there is simply no record one way or the other, no error, let alone fundamental error, has been shown)(citing United States v. Pinero, 948 F.2d 698, 700 (11th Cir. 1991)(concluding mere absence of record does not establish jury was unsworn; thus, challenge involved issue of fact not appropriately raised on appeal)]; see also, Lott v. State, 826 So. 2d 457, 458 (Fla. 1st DCA 2002)(If jurors have taken the oath in the jury assembly room, they need not take it again in the courtroom).

---

[8] That the proceedings in the courtroom may not include the administration of the oath does not establish the oath was not administered to prospective jurors. It is reasonable to conclude the oath requirement was met when it was administered to prospective jurors in the jury pool room.

[9] Furthermore, if a petitioner asserts new allegations of ineffective assistance of counsel that were not timely and properly raised in state court, they may not be considered by this Court. Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992); Jackson v. Herring, 42 F.3d 1350, 1355 (11th Cir.), reh. denied, 51 F.3d 1052 (11th Cir. 1995)(petitioner's ineffective assistance claim was not raised in state court and was procedurally barred).

Moreover, Beltran did not provide a sufficient basis upon which to conclude there was any reasonable probability of a different outcome had counsel raised the proposed objection or argument. E.g., Lott, 826 So. 2d at 458 (concluding defendant was unable to show prejudice arising from his counsel's silence in the face of failure to administer the oath; he did not claim, for example, that unsworn juror provided false information and defendant would likely have prevailed at trial with different juror). Accordingly, the state decision resulted in a reasonable application of either of Strickland's prongs.

In rejecting Beltran's rule 3.850 claim in which he faulted counsel for not presenting an entrapment defense, the state trial court held, based on state law, that because Beltran denied the acts constituting the crimes, the entrapment defense was not viable. Given the underlying state law determination as to the entrapment defense, Beltran is unable to establish any deficiency in defense counsel's failure to raise the entrapment defense. In view of Beltran's denial of an exchange of money or drugs, it was reasonable to forego an entrapment defense.

This claim also fails scrutiny under the prejudice prong. In view of the state law determination the entrapment defense was not available in his case because Beltran denied committing the criminal acts,  Beltran cannot show actual prejudice based on defense counsel's failing to raise the entrapment defense.

Grounds three and four do not warrant federal habeas corpus relief.

Accordingly, the Court orders:

That Petitioner Beltran's petition is denied.  The Clerk is directed to enter judgment against Beltran and to close this case.

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on October 31, 2006.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Counsel of Record

Salvador Beltran